

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Carrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin, Texas

Dear Sir:

Opinion No. O-3467
Re: Authority to arrest a
fugitive from justice on
a warrant issued by the
Governor of Texas after
said fugitive has been
released in a habeas cor-
pus proceeding construed
herein to be void.

   This is in reply to your inquiry as to whether
or not your department is authorized to arrest Eldridge
S. Price on a warrant issued by the Governor of Texas in
an extradition hearing.

   The facts as given to us by you, and obtained
by us in our own investigation, show that Eldridge S.
Price was charged in Kansas by sworn complaint before a
magistrate in accordance with the laws of that state, with
the offense of "Perjury and Subordination of Perjury".
After the date of the alleged offense the said Eldridge
S. Price fled to Texas. The Governor of Kansas requested
the Governor of Texas to cause said party to be arrested
and delivered to the law enforcement officers of Kansas.
At the request of said party's attorneys, the Governor of
Texas held an extradition hearing in his office on the
afternoon of March 26, 1941, at which hearing the said
Eldridge S. Price voluntarily appeared and testified;
and after said hearing the Governor ordered that the said
Price be extradited to Kansas, and he issued an executive
warrant, directed to all officers of Texas, ordering that
the said Price be arrested and delivered to the agent of
the Governor of Kansas.

   Several hours prior to the holding of the extra-
dition hearing before the Governor, and while the said

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Lee Brady - page 2

costing $2,295.00. It has also installed a vault door
at a cost of $600.00, Venitian blinds at a cost of
$71.20 and a Neon sign at the entrance of the customers'
vault at a cost of $20.00. These items have been added
to the cost of the building, making a total of $13,139.12,
at which figure the building is carried on the books of
the bank. This bank has invested in movable fixtures a
sum equal to 15% of its capital and surplus.

"The bank has taken the position that the built-in marble
fixtures above mentioned having been constructed on brick
walls, constitute a part of the building and, therefore,
are not fixtures within the purview of Article 512 above
mentioned. The same position is taken with reference to
the vault door, Venitian blinds and Neon sign.

"Please advise whether or not these marble fixtures, this
vault door, blinds and sign are 'fixtures' within the pur-
view of Article 512, or whether they constitute a part
of the banking house within the meaning of that Statute."

Your inquiry is incapable of a definite or final
answer one way or the other, for the reasons hereinafter
stated.

The term "fixtures", in legal contemplation,
ordinarily means those articles or things that are per-
manently attached to the land, with the intention that
they should become a part thereof. Obviously, the word
is not used in this sense in the bank statute, but rather
it is used in the sense of personal property commonly
known as "trade fixtures". These trade fixtures may,
and in most instances do, consist of articles capable
of permanent attachment to the land, but on the other
hand, they are likewise equally capable of use as per-
sonal property, with no intention whatever of perman-
ently attaching them to the realty.

The matter is not determined by any rule of
physical or structural attachment of the fixture to the
land, such physical attachment, and the extent and nature
thereof, are merely circumstances tending to evidence the
real intention of the person or persons owning the build-
ing and the fixtures. Each and every article mentioned
by you may, present the proper intention, become and be a

Honorable Homer Garrison, Jr., Director, Page 3

The District Judge, the Honorable S. B. Carr, issued a writ of habeas corpus immediately in words as follows:

"WRIT OF HABEAS CORPUS

"THE STATE OF TEXAS.

"To T. L. Poole, Sheriff of La Salle County, Texas,
    or any other Peace Officer in said State into
    whose hands this writ may be placed; Greeting:

"Your are hereby commanded to produce before me at Jourdanton in the County of Atascosa, State of Texas, on the 26th day of March, A. D. 1941, at 10 o'clock A. M., the person of E. S. Price whom it is alleged is now illegally restrained of his liberty, when and where cause must be shown why the said E. S. Price is held in custody or restrained of his liberty.

"Herein fail not and due return make hereof.

"Witness my signature this 26th day of March, 1941.

"S. B. CARR
"Judge, 81st Judicial District of Texas"

After said writ of habeas corpus was issued in said case, the extradition hearing was held during the afternoon of the same day as mentioned above. The said Eldridge S. Price was not under arrest or in the custody of anyone at the time the writ was issued or during the extradition hearing, and he attended the hearing voluntarily.

Immediately after the extradition hearing the Governor issued his executive warrant for the arrest of the said Price, referred to above; but before the same could be executed, and within a few minutes after said hearing, the said Price was taken into custody near the Governor's office in the corridors of the State Capitol Building by Mr. T. H. Poole, Sheriff of La Salle County, and said Sheriff took the said Price to Jourdanton, Atascosa County, before the Hon. S. B. Carr, who presided over the District Courts in both La Salle and Atascosa counties as Judge of the 81st Judicial District, and Judge Carr released the said Price on bond by virtue of an order as follows:

Honorable Homer Garrison, Jr., Director, Page 4

```
"Ex Parte:          :  IN THE DISTRICT COURT,
      E. S. PRICE    :  LA SALLE COUNTY, TEXAS
```

"The Sheriff of La Salle County, Texas, having produced the body of E. S. Price, before the District Court at Jourdanton, Texas, in pursuance of a Writ of Habeas Corpus heretofore issued by this Court, and the Court not having sufficient time to hear said Writ on its merits, the said hearing is postponed until April 11th, A. D., 1941, at 10:00 o'clock A. M., in the District Court Room at Cotulla, La Salle County, Texas, And:

"The said E. S. Price is hereby directed to appear before the said Court at said time.

"In the meantime the said E. S. Price will be released from the custody of the Sheriff of La Salle County, Texas, upon said Price giving bond for his appearance as afore stated in the sum of ONE THOUSAND Dollars, to be approved by the Sheriff of La Salle County, Texas.

"Dated this 27th day of March, A. D., 1941.

```
                       "S. B. CARR
                       JUDGE, 81st JUDICIAL
                       DISTRICT OF TEXAS"
```

No writ of habeas corpus in this case was served on anybody, except that one was served on the said T. H. Poole the morning the petition for writ of habeas corpus was filed, and that service was before the said Price was in custody of anyone. No writ or process was ever served on the Department of Public Safety or any member or agent thereof, or on any member of the Attorney General's Department, or on any Kansas officer. After the said Price was released on bond by Judge S. B. Carr, the Judge wrote a letter to the County Attorney of Johnson County, Kansas, the county in which the said Price was charged with perjury and subordination of perjury, and the Judge also advised an Assistant Attorney General of Texas by long distance telephone conversation that a habeas corpus hearing would be

Honorable Homer Garrison, Jr., Director, Page 5

held on April 21, 1941. A hearing was held on that date in Floresville, Wilson County, which is also in Judge Carr's district, and no one appeared before the court except Sheriff T. H. Poole and the said Eldridge S. Price, and no testimony of any kind was heard by the court or offered by anyone, but the court entered an order as follows:

"No. 1459

"Ex Parte:  :  IN THE DISTRICT COURT
E. S. Price  :  OF LA SALLE COUNTY, TEXAS

"On this the 21st day of April, A. D., 1941, came on to be considered by the Court the above styled application for writ of Habeas Corpus, filed herein on the 26th day of March, A. D., 1941, and in pursuance to which a writ of Habeas Corpus was granted by this Court on the 27th day of March, A. D., 1941, and the said E. S. Price, having been allowed to give bond until a hearing could be held on the said writ of Habeas Corpus; and it appearing to the Court that the Kansas authorities have been properly and duly notified of this hearing and the setting thereof on this date, and the Court having been notified in writing that they would not appear, and the Attorney General's Office in Austin, Texas, has been given due notice of this hearing and of the setting, and the Assistant Attorney General, Cecil Rotsh, having advised the Court that his Department was not interested in the writ of Habeas Corpus hearing, and that they would not be present, and as a matter of fact were not present, neither was any representative from Kansas present, and the Court thereupon proceeded to hear all testimony introduced by the applicant, including his witnesses, and having also fully considered the law applicable to said writ of Habeas Corpus the Court is of the opinion that said applicant, E. S. Price, should and ought to be by the Court fully discharged under said writ of Habeas Corpus and that the said E. S. Price should not further be molested, harrassed, or arrested by T. H. Poole, Sheriff of La Salle County, or by the Department of Public Safety of the State of Texas, or any member thereof, the Highway Patrol, or by any other peace officer in the State of Texas, in connection with, or by virtue of certain extra-

Honorable Homer Garrison, Jr., Director, Page 6

dition proceedings had before the Governor of
Texas on the 26th day of March, A. D., 1941, or
by virtue of any other extradition warrant in
connection therewith.

"It is therefore ORDERED, ADJUDGED and
DECREED by the Court that the applicant, E. S.
Price, be, and he is hereby fully discharged
by the Court under and by virtue of the writ
of Habeas Corpus growing out of extradition
proceedings heretofore had before the Governor
of Texas on the 26th day of March, A. D., 1941,
and the said E. S. Price is hereby fully dis-
charged from and under the warrant of arrest
issued by the Governor of Texas on the aforesaid
date, in pursuance to such extradition proceed-
ings, and every peace officer in the State of
Texas is by virtue of this Order directed and
warned not to molest, harrass, or arrest the
said E. S. Price, under any extradition warrant
issued in connection with the said extradition
proceedings had before the Governor of Texas
on the aforesaid date, or by virtue of any other
extradition warrant, or any other warrant issued
in connection therewith.

"S. B. Carr
JUDGE, 81ST JUDICIAL
DISTRICT OF TEXAS"

We will now proceed to consider the law in the
light of the above facts, and to determine whether or not
your authority to arrest Eldridge S. Price on the Governor's
warrant has been affected by said order.

We do not believe that the habeas corpus pro-
ceeding in question affects your right and duty to arrest
Eldridge S. Price under the authority of the Governor's
extradition warrant. Our conclusion is based on two grounds:
First, the habeas corpus proceeding was void because the
relator, Eldridge S. Price, was not under custody or re-
straint when the petition was presented to the court and the
writ of habeas corpus issued, although he was taken into
custody later; and, Second, the question of the validity of
the Governor's extradition warrant was not presented in the
habeas corpus hearing and is therefore not res judicata

Honorable Homer Garrison, Jr., Director, Page 7

in so far as concerns persons who were not served with a writ or were not litigants in said proceeding.

We will quote the Articles in the Code of Criminal Procedure of Texas, which we believe have some bearing on this question. Article 113, C. C. P., says:

"The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint."

Article 122, C. C. P., says:

"When application has been made to a judge under the circumstances set forth in the two preceding articles, he shall appoint a time when he will examine the cause of the applicant, and issue the writ returnable at that time, in the county where the offense is charged in the indictment or information to have been committed. He shall also specify some place in the county where he will hear the application."

Article 127, C. C. P., says:

"The writ of habeas corpus shall be granted without delay by the judge or court receiving the petition, unless it be manifest from the petition itself, or some documents annexed to it, that the party is entitled to no relief whatever."

Article 133, C. C. P., says:

"The words, 'confined', 'imprisoned', 'in custody', 'confinement', 'imprisonment,' refer, not only to the actual, corporeal and forcible

detention of a person, but likewise to any coercive measures by threats, menaces or the fear of injury, whereby one person exercises a control over the person of another, and detains him within certain limits."

Article 134, C. C. P., says:

"By 'restraint' is meant the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right."

Article 135, C. C. P., says:

"The writ of habeas corpus is intended to be applicable to all such cases of confinement and restraint, where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law."

Article 156, C. C. P., says:

"The judge or court, after having examined the return and all documents attached, and heard the testimony offered on both sides, shall, according to the facts and circumstances of the case, proceed either to remand the party into custody, admit him to bail or discharge him; provided, that no defendant shall be discharged after indictment without bail."

In this case the relator was not under custody or restraint when the writ of habeas corpus was issued, and it is our conclusion that because of that fact the writ and the proceedings following were void. In the case of Ex parte Snyder, 39 Tex. Cr. R. 120, 44 S. W. 1108, the Court of Criminal Appeals of Texas said:

Honorable Homer Garrison, Jr., Director, Page 9

> "Before a party can resort to the writ
> of habeas corpus, he must be confined in jail
> or restrained of his liberty. . ."

In the case of Ex parte Beamer, 116 Tex. 39, 285 S. W.
255, the Supreme Court of Texas said:

> ". . .It is a well-established principle
> of law that, if one is entitled to the writ
> of habeas corpus, he must be actually restrain-
> ed of his liberty, or at least there must be
> some legal restraint other than mere moral
> suasion. . ."

The same holding was also made in the recent case of Ex
parte Dumas, 137 Tex. Crim. R. 524, 132 S. W. (2d) 883.
We have been unable to find a Texas appellate court case
in which the relator was at liberty when the writ of
habeas corpus was issued in his behalf and then taken
into custody prior to the hearing. In all of the Texas
cases on this question that we have found, the relator
was at liberty at the time of the hearing in the trial
court or at the time of the hearing in the appellate
court; but, the language of the Texas decisions indicates
that the writ cannot legally issue if the relator is at
liberty at the time of issuance, and we are unable to
see how his subsequent arrest can validate the writ and
the proceedings thereunder. In the case of In re Brydon,
9 N. M. 647, 43 Pac. 691, an original habeas corpus pro-
ceeding decided by the Supreme Court of New Mexico, the
relator was not under custody or restraint when the
petition for the writ in his behalf was filed, but prior
to the hearing he was taken into custody by the sheriff
who was alleged to have him under arrest; and the court
held that he was not entitled to an order of release, and
in its opinion said:

> ". . . To invoke the action of this court,
> there must be a substantial case, and there
> cannot be with the petitioner at large, in the
> enjoyment of his liberty, at the date when the
> petition was filed. . ."

In this case no evidence was introduced in the hearing at Floresville before the Honorable S. B. Carr, and we are unable to see how he could pass on the validity of the Governor's extradition warrant, even though he purports in his judgment to adjudicate that issue. It may be that if the facts concerning the validity of the Governor's warrant had been presented in that hearing so that the Judge could have passed on them his judgment would have been res judicata on the issues raised thereby as to everyone, including persons not parties to the proceeding, but no evidence was introduced and no member of the Department of Public Safety, or any of its officers or agents, was a party to the proceeding, and we do not believe that the question of the validity of the Governor's warrant is res judicata as far as they are concerned. Therefore, they are not bound by Judge Carr's order. In 25 American Jurisprudence 252, it says:

> "It is the well-established general rule . . . that discharge upon habeas corpus operates as a bar and estoppel only as to the particular proceeding or process under review and is res judicata only upon the same question presented under the same state of facts. . ."

In the case of Desmond v. Eggers, (U.S.C.C.A.) 18 Fed. (2d) 503, which concerned an extradition proceeding, a very similar question to the one involved here arose, and the court said:

> "It is lastly contended that a former order of discharge in a habeas corpus proceeding between the same parties is res adjudicata. The facts upon which this contention is based are as follows: There were two hearings of the same charge before two different committing magistrates. On the former the only testimony offered by the Canadian government consisted of the affidavits and documents certified or authenticated by the American consul at Victoria, and

Honorable Homer Garrison, Jr., Director, Page 11

in the first habeas corpus proceeding the court below held that such certification was unauthorized and void. The appellee was then held for further proceedings under another warrant. On the second hearing before the committing magistrate, the Canadian government offered the same documentary evidence, and also oral testimony to which we have referred in an earlier part of this opinion.

"In the second habeas corpus proceeding, the court below adhered to its former ruling that the documentary evidence was not properly authenticated, and further held that the mode of authentication prescribed by the statute was exclusive, and that oral testimony was not competent. Assuming, without deciding that the first order of discharge was res adjudicata, it could only be so as to the case then before the court. On the second hearing, as already stated, further competent testimony was offered by the Canadian government, sufficient in itself to make out a prima facie case, regardless of the certification by the consular officer. From this statement it becomes at once apparent that the order in the first proceeding was not a bar to the second proceeding, based as it was on different testimony." (Underscoring ours.)

A similar holding was also followed in the case of People v. Toman, 364 Ill. 516, 4 N. E. (2d) 859.

We have examined the Governor's extradition warrant about which you ask, and we find that it is in proper form. For the reasons outlined above, we hold that the habeas corpus proceedings in question, including Judge Carr's final order, are not binding on the Department of Public Safety. Our answer to your question is that your department is authorized to arrest Eldridge B. Price on the warrant issued by the Governor.

APPROVED MAY 14, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

CCR:lh

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Cecil C. Rotsch
Assistant

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN

