**Jerry Don JONES, Appellant,**

v.

**Katherine IGNAL, Appellee.**

**No. 3–90–039–CV.**

Court of Appeals of Texas,
Austin.

Nov. 14, 1990.

Rehearing Overruled Dec. 19, 1990.

Jay Doyle, Kuhn, Doyle & Kuhn, P.C., Austin, for appellant.

Penny A. Wilkov, Wilkov & Wilkov, Austin, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

After the dissolution of her marriage, Katherine Ignal recovered judgment against Jerry Don Jones, her former husband, for unpaid and past-due child support in the amount of $9,909.68, together with attorney's fees and costs. Jones appeals. We will affirm the judgment.

## THE CONTROVERSY

The trial court dissolved the parties' marriage in a 1972 decree that required Jones to pay monthly child-support payments of $300.00, a sum increased to $400.00 by a 1980 court order resulting from Ignal's motion for such relief.

While the appellate record is not clear on the point, Ignal apparently moved in the spring of 1988 that Jones be held in contempt for failing to pay the child-support obligation set in the 1980 court order. We conclude as much from a trial-court order filed March 18, 1988. The order recites that Jones appeared in the cause and that the parties had agreed to the relief ordered by the court. In its order, the court "recessed" the contempt proceeding on conditions set out in the order. One condition required Jones to pay $400.00 per month "as current child support," commencing April 1, 1988, another that he pay the sum of $400.00 "instanter" toward a $7,800.00 net "arrearage" in child support. The remainder of the arrearage was expressly "deferred."

On April 18, 1988, Jones filed in the cause, by and through his attorney of record, an original answer to Ignal's motion for contempt, setting out a general denial, several "special denials" and special exceptions, and an affirmative defense, all by way of "answer to the motion for contempt." He prayed for affirmative relief by requesting that Ignal's motion be dis-

missed for want of jurisdiction, owing to certain defects in her motion.

Ignal's motion for contempt, referred to in the agreed order of March 18, 1988, and in Jones's original answer of April 18, 1988, does not appear in the record. From the references made to her motion in other parts of the record, we conclude she requested enforcement of Jones's child-support obligation solely by contempt.

In a motion filed June 8, 1988, however, Ignal requested enforcement of Jones's obligation by contempt *and* by reducing to judgment the unpaid and past-due monthly payments which allegedly totaled $8,782.00. In a subsequent motion filed January 3, 1989, Ignal moved for the same relief on an allegation that the sums past-due and owing had increased to $10,200.00.

In a judgment filed April 18, 1989, the trial court ordered that Ignal recover from Jones the amount of $9,909.68 as past-due and unpaid child support, together with her attorney's fees and costs, reciting that Jones and his attorney of record did not appear at the hearing "although given notice as required by law," from which the court found "that it has jurisdiction over both the subject matter and the parties." The trial court thereafter overruled Jones's motion for new trial filed July 31, 1989.

As he did in his motion for new trial, Jones complains on appeal that the trial court lacked in personam jurisdiction to render its judgment because he had not been served with citation regarding Ignal's motion of January 3, 1989. He complains as well, on appeal, that the trial court lacked subject-matter jurisdiction to the extent the judgment purports to award sums representing the support of one child who was an adult at the time Ignal filed her motion.

## THE RELEVANT STATUTORY PROVISIONS

At the times in question, the Texas Family Code provided in § 14.31 for the enforcement of any order, judgment, or decree regarding the parent-child relationship. 1987 Tex.Gen.Laws, 2d C.S., ch. 73, § 5, at 227–28 [Tex.Fam.Code § 14.31, since amended]. Briefly stated, the statute directed that the enforcement proceedings be commenced by the filing of a verified motion setting out the particulars of the opponent's failure to comply and the relief requested.[1] The motion might contain a joinder of several claims and remedies, including a request for enforcement of a child-support order by contempt under § 14.40 and a request that child-support arrearages be reduced to judgment under § 14.41. Except in cases not material here, former § 14.31 declared that the "the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit shall apply to a motion to enforce under" § 14.31. Moreover, the statute declared that "[e]ach party whose rights, privileges, duties, or powers may be affected by the motion to enforce is entitled to receive notice by the service of citation commanding the person to appear by filing a written answer"; and, "[a]fter the filing of an answer, the proceedings shall be conducted in the same general manner as in other civil cases."

Former § 14.41 of the Code dealt specifically with motions requesting that unpaid and past-due child support be reduced to judgment. 1986 Tex.Gen.Laws, 2d C.S., ch. 10, § 6, at 17 [Tex.Fam.Code § 14.41, since amended]. It provided that on motion "of an obligee or obligor, after notice and hearing, the court shall confirm the amount of child support in arrears and shall render judgment against an obligor for any amount of child support unpaid and owing." Under the heading "Time Limita-

---

1. The Texas Rules of Civil Procedure Ann. (1967 & Supp.1990) distinguish between "pleadings" and "motions." The only "pleadings" in a cause are by "petition" and "answer." (Rule 45). A "motion" is not a "pleading." Rather, "[a] motion is an application to the court for an order granting relief which is not embraced within the prayer of a pleading." 3 McDonald, Texas Civil Practice § 10.18, at 33 (rev. ed. 1983). By defi-

nition then, the rules of civil procedure applicable to "pleadings," such as Rule 63 authorizing the amendment of "pleadings," cannot apply *as such* to "motions." The rules contemplate, nevertheless, an extensive motion practice, ranging from motions to abate a peremptory mandamus granted without notice (Rule 694) to motions to transfer venue (Rule 84).

tions," the statute provided that the trial court "retained jurisdiction" to award such relief if a motion therefor was filed within two years after the child became an adult or the child-support obligation terminated by a decree, order, or operation of law.

## IN PERSONAM JURISDICTION

Jones contends the trial court lacked jurisdiction over his person because the record does not show the issuance, service, and return of citation commanding him to appear by filing a written answer to Ignal's motion filed January 3, 1989. Jones argues that former § 14.31 explicitly required service of citation; and, moreover, absent such service he was deprived of property without due process of law.

The issue reduces to whether the required service of citation and a return thereon were necessary in light of the fact that in response to Ignal's *preceding* motion for enforcement, by way of contempt, Jones appeared generally in the cause by a written answer filed April 18, 1988, requesting affirmative relief—"that he be adjudged not to be held [sic] in contempt" or that the court "dismiss this case for lack of jurisdiction" because of defects in Ignal's motion.

■ Jones's argument depends upon whether Ignal's motion of January 3, 1989, should be viewed as initiating an entirely *new* proceeding under § 14.31 or merely as the last *amendment* to Ignal's original motion for enforcement by way of contempt. The original motion is not included in the appellate record, but the parties apparently agree that it requested enforcement by way of contempt alone; and, if Ignal's first motion could be amended at all, it was first amended by a motion filed June 8, 1988, requesting enforcement by way of contempt *and* by reducing to judgment the then past-due balance which she alleged to be $8,782.00. The first amendment was superseded, if that was the correct legal effect, by Ignal's last motion filed January 3, 1989, upon which she recovered judgment after hearing.

We believe that former § 14.31 of the Code contemplated and permitted subsequent amendment of the motion it required for the initiation of an enforcement proceeding thereunder. Consequently, when Jones filed an original answer in response to Ignal's original motion for contempt, he appeared in reference to that motion *and* the subsequent amendments to it that Ignal filed on June 8, 1988, and on January 3, 1989.

Nothing in the relevant statutory provisions speaks to the issue of whether an enforcement motion under §§ 14.31 or 14.-41 may be amended. That is to say, nothing in the statutes expressly forbids or permits such amendments. In some instances, the amendment of motions is rather clearly permitted, as in the case of amended motions for new trial, *see* Tex.R. Civ.P.Ann. 329b(b) (Supp.1990); but within any limitations designed to prevent surprise, we believe the general practice permits the amendment of any written motion as in the analogous case of amended pleadings under Rule 63. *See Walter v. Rowland,* 189 S.W. 981, 982 (Tex.Civ.App.1916, writ ref'd) (amended motion for new trial supplants the original motion to become the object of the court's decision); 60 C.J.S. Motions and Orders § 41, at 63 (1969) ("When a party concludes that his motion is defective or insufficient, he should apply for and obtain leave to withdraw it or to amend it."). Our conclusion is buttressed by the fact that the general tenor of former §§ 14.31 and 14.41 provided for the trial of post-divorce enforcement issues in the same general manner as in ordinary civil litigation. We hold, therefore, that amended motions were authorized in proceedings under the two statutes. The question of surprise is not raised in the present case.

Given that Ignal might amend her original motion for enforcement, was that the effect of her subsequent motion filed January 3, 1989? We cannot, of course, say that it lacked that effect; the absence of a copy of the original motion from the appellate record precludes our doing so. The burden lay upon Jones to include the original motion in the appellate transcript, and we cannot presume error in the trial-court

judgment on a theory that the motion of January 3, 1989, was so different in substance from the original motion that the subsequent motion could not amount to an amendment. We do not believe that the additional enforcement remedy of reducing Jones's obligation to a judgment, while the original motion evidently requested only contempt, negates the possibility of an amendment. Former § 14.31 expressly authorized the joinder of these remedies. That the motion filed January 3, 1989 was not entitled an "amendment" is immaterial. *Cf.* Tex.R.Civ.P.Ann. 71 (Supp.1990). It is material in our view that Ignal's original motion and each of the two succeeding motions requested enforcement of the same obligation, and her request for such relief was never adjudicated except in reference to her last motion, filed January 3, 1989.

■■■ For the reasons given, we hold that Ignal's original motion for contempt initiated the statutory proceeding under § 14.31 for enforcement of Jones's child-support obligation previously ordered in the cause, subject to her right to amend her motion thereafter, as necessary, by joining her claim under § 14.41 that the obligation be reduced to judgment to the extent it was past due and owing. By filing his original answer to Ignal's original motion, Jones appeared generally in the cause and submitted to the jurisdiction of the court with respect to the original motion as it might be, and subsequently was, amended on January 3, 1989. His general appearance by a written answer obviated any necessity for issuance, service, and return of citation respecting the amended motion filed January 3, 1989, upon which judgment was rendered. *Cf.* Tex.R.Civ.P. Ann. 121 (1979) ("An answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him."); *Ex parte Cummings,* 610 S.W.2d 238, 242 (Tex.Civ.App.1980, no writ) (husband's voluntary appearance by written answer dispensed with necessity for citation in wife's motion that he be held in contempt for failing to pay child-support obligation); *Ex parte Dabau,* 732 S.W.2d 773, 776 (Tex. App.1987, no writ) (errors in return of citation rendered immaterial where husband appeared voluntarily at contempt proceeding initiated by wife to enforce child-support obligation).

Because we hold that the trial court had personal jurisdiction over Jones, we need not address and hereby overrule Jones's second point of error in which he claims a deprivation of due process of law based upon a judgment not preceded by service of citation.

### SUBJECT–MATTER JURISDICTION

■■■ In his third point of error, Jones asserts the trial court lacked subject-matter jurisdiction to render judgment for child-support sums attributable to Lyndon Decker Jones, the older of the two children, who had been an adult for more than two years when Ignal filed her "Motion to Enforce."[2] Indeed, Lyndon became eighteen on November 2, 1984, and Ignal filed the contempt motion on January 3, 1989. Jones bases his contention on the version of § 14.41(b) of the Texas Family Code effective at the time Ignal filed her motion, which provided as follows:

> The court retains jurisdiction to enter judgment for past-due child support obligations if a motion to render judgment for the arrearages is filed within two years after:
>
> (1) the child becomes an adult; or
> (2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

1986 Tex.Gen.Laws, 2d C.S., ch. 10, § 6, at 17.

We do not believe that former § 14.41(b) necessarily deprived the trial court of subject-matter jurisdiction two years after the older of two children reached age eighteen. Subsection (2) of the statute provided alternatively that jurisdiction to enter a judgment for arrearages terminated two years after "the date on which the child support

---

**2.** In his brief, Jones refers to the January 3, 1989 motion as the "Motion to Enforce."

obligation terminates pursuant to the decree or order or by operation of law."

The "Order" obligating Jones to pay child support, which is a modification of the original order and is dated September 29, 1980, states as follows:

It is further ORDERED, ADJUDGED and DECREED that Jerry Don Jones pay into the registry of the Court located in the Domestic Relations Office, Second Floor, Travis County Courthouse, on the 1st day of August, 1980, the sum of $300.00 for the support of the two minor children and that he continue with a like payment on the 1st day of each and every month thereafter until September 1, 1981, on which date he is ORDERED to pay the sum of $400.00 through the registry of the court in the same manner for the support of the two minor children, and continuing with a like payment on the 1st of each and every month thereafter *subject only to further orders of the Court.*

(Emphasis added). The obligation stated in the foregoing quotation has not been terminated by any "decree or order" shown in the record. Was the obligation terminated "by operation of law"?

There is nothing in the order suggesting that Jones's obligation to pay child support terminated when the older of his two children reached age eighteen. In fact, the order states explicitly that the obligation to pay child support continues "subject only to further orders of the Court." The record contains no further orders of the court modifying Jones's continuing obligation to pay support in the amount set forth in the order.[3]

If Jones wished a reduction of child support when his eldest child reached majority, or if he contended his obligation had become uncertain for that reason, the burden was upon him to move the court for a revision of the order in question. His is not a case involving the attainment of majority by an only child. *See In Interest of*

*Brecheisen,* 694 S.W.2d 438 (Tex.App.1985, writ dism'd). Where divorced parents have more than one child, the obligor parent's duty to pay child support in the amount mandated by the order or decree does not terminate when one of the children reaches majority, unless the order so provides. *Hopkins v. Hopkins,* 539 S.W.2d 242, 249 (Tex.Civ.App.1976, writ dism'd); *Friedman v. Friedman,* 521 S.W.2d 111, 114 (Tex.Civ. App.1975, no writ).

We hold, therefore, that under former § 14.41(b)(2), Jones's obligation to pay child support did not terminate by operation of law.[4] Because the support obligation had not terminated pursuant to decree or order or by operation of law when Ignal filed her motion on January 3, 1989, we hold that the trial court had subject-matter jurisdiction to enter the default Judgment For Unpaid Child Support on April 18, 1989.

We affirm the judgment of the trial court.

GAMMAGE, J., not participating.

---

**3.** The only other order entered was the agreed order filed March 18, 1988, the purpose of which was to recess a hearing on Ignal's first motion for contempt. The recess was condi-

tioned on the matters set out in the text of our opinion.

**4.** The legal effect of the second child's reaching majority is not relevant to the appeal.