**Ex parte Roger BARLOW.**

**No. 14–95–00175–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 1995.

Terri Tipton Holder, Angleton, for relator.

Lynn J. Klement, Angleton, for respondent.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION

ANDERSON, Justice.

In this original proceeding, Roger Barlow, relator, seeks a writ of habeas corpus alleging he is illegally restrained of his liberty by virtue of a judgment of contempt and a commitment order issued by the 300th Judicial District of Brazoria County. We grant relator's writ of habeas corpus.

Roger Barlow, relator, and Jerry "Barlow" Smith (Smith) were divorced on March 19, 1987. Relator was ordered to pay $300.00 per month as child support. In December of 1992, Smith filed a "Motion to Enforce Child–Support Order." On January 11, 1994, Smith filed her "First Amended Motion to Enforce Child–Support Order." This motion sought to enforce the child support provisions of the 1987 divorce decree. The motion alleged that relator failed to make child support payments as required.

The trial court held a hearing on Smith's motion on June 8–9, 1994. On June 24, 1994, the court entered an order holding relator in contempt. In that order, the court found that relator failed to make his monthly child support payments as required in the 1987 divorce decree from October 15, 1990, through June 15, 1993. In all, the court found that relator failed to make thirty-three payments; each failure was considered a separate violation of the divorce decree. The court found relator in contempt for each separate violation and ordered that he be confined in the Brazoria County Jail for six months for each separate violation. The court ordered the confinement to run consecutively. These findings and orders were placed under the heading "Criminal Contempt." Immediately following this section, was a section entitled "Civil Contempt." Under this heading in the June 24, 1994, order, the trial court ordered relator to remain in jail until he complied with the following terms:

1. Pay regular child support in accordance with the order on Motion to Modify in Suit Affecting the Parent Child Relationship;

2. Pay $4,000.00 on or before July 8, 1994, to Smith. Thereafter, pay Smith $50.00 a week beginning June 15, 1994, and continuing until all child support arrearages have been paid.

3. Pay $48.00 costs to the District Clerk of Brazoria County by September 10, 1994.

4. Pay $1,000.00 as reasonable attorney's fees to Lenette Terry by September 10, 1994.

794

The court then ordered that commitment would be suspended if relator complied with these same terms.

A few months later, Smith filed a "Motion to Revoke Suspension of Commitment." The court heard this motion on November 21, 1994. The next day, the court entered a written order finding that relator failed to comply with the suspension terms of the contempt order signed June 24, 1994. The court revoked relator's suspension of commitment and ordered relator committed to the custody of the Brazoria County sheriff to be confined "for a period of six (6) months for each of the thirty-three (33) separate violations enumerated." The order further provided that relator would remain confined until he complied with the four terms set out in the "Civil Contempt" section of the June 24, 1994, order.

Relator was jailed pursuant to the commitment order dated November 22, 1994. On February 16, 1995, relator filed a petition for writ of habeas corpus with this court. On February 23, 1995, we ordered relator released upon his posting a $2,500.00 bond. In this original proceeding, relator predicates his petition for writ of habeas corpus on five arguments, namely: (1) the trial court's judgment is void because the court failed to credit relator with the social security disability payments made to the child while relator was disabled; (2) relator was denied due process because the contempt order was not based on a motion that fairly apprised him of the allegations; (3) the trial court's judgment is void because relator is unable to pay the arrearage as ordered; (4) the trial court's findings have no evidentiary support and are therefore, void; and (5) the commitment order is void because relator was denied his right to a jury trial and relator did not affirmatively waive that right.

An original habeas corpus proceeding is a collateral attack on a contempt judgment. *See Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967). The relator must conclusively establish his right to relief. *Ex parte Crawford,* 506 S.W.2d 920, 922 (Tex. Civ.App.—Tyler 1974, orig. proceeding). However, contempt is not presumed to exist; rather, it is presumed not to exist. *Ex parte*

*Taylor,* 807 S.W.2d 746, 748 (Tex.Crim.App. 1991). A court will issue a writ of habeas corpus if the order underlying the contempt is void, *Ex parte Shaffer,* 649 S.W.2d 300, 302 (Tex.1983), or if the contempt order itself is void. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Friedman,* 808 S.W.2d 166, 168 (Tex.App.—El Paso 1991, orig. proceeding).

In his second contention, relator asserts that the contempt and commitment orders are void because he was denied due process. Relator argues that he was denied due process because the order holding him in contempt was based on a motion that failed to fairly apprise him of the allegations against him. We agree.

Enforcement proceedings for child support orders are commenced by the filing of a motion to enforce. TEX.FAM.CODE ANN. § 14.31 (Vernon Supp.1995). A motion to enforce **must** give the respondent, in ordinary and concise language, notice of the provisions of the final order, decree, or judgment sought to be enforced, the manner of noncompliance, and the relief sought by the movant. TEX.FAM.CODE ANN. § 14.311(a) (Vernon Supp.1995). (emphasis added) If the movant is seeking to enforce a child support order, he or she **must** state in the motion: (1) the amount owed under the terms of the order; (2) the amount paid; and (3) the amount of arrearage. TEX.FAM.CODE ANN. § 14.311(b) (Vernon Supp.1995). (emphasis added) When seeking a motion for contempt, the movant **must** allege the portion of the order allegedly violated and must specify as to each date of alleged contempt, the amount due and the amount paid, if any. TEX.FAM.CODE ANN. § 14.312(a) (Vernon Supp.1995). (emphasis added)

Smith's first amended motion was not only a motion to enforce, but was also a motion for contempt. In the motion to enforce, Smith asked that relator "be held in contempt, jailed for six months, and/or fined $500.00 for each count alleged above." Therefore, because the motion was one to

enforce and one for contempt, Smith had to comply with the requirements of section 14.311(a) and (b) and section 14.312(a).

■ In December of 1992, Smith filed a "Motion to Enforce Child–Support Order." [1] Attached to that document is an "Arrearage Report" purporting to show payments made to Jerry Smith from the relator. *See* TEX. FAM.CODE ANN. § 14.311(c) (Vernon Supp. 1995). On January 11, 1994, Smith filed a "First Amended Motion to Enforce Child–Support Order." The first amended motion superseded the original motion to enforce filed by Smith in December of 1992. *Ex parte Thompson*, 803 S.W.2d 876, 877 (Tex. App.—Corpus Christi 1991, orig. proceeding). *See Jones v. Ignal*, 798 S.W.2d 898, 901 (Tex.App.—Austin 1990, writ denied); TEX. R.CIV.P. 65. The first amended motion sought to enforce the child support provisions of the 1987 divorce decree. The motion alleged:

> Respondent has failed to comply with the order described above as follows: Respondent has failed to make child support payments to Movant through the Brazoria County Child Support Office in the amounts and on the dates **more particularly set forth in the attached Exhibit A** which is incorporated by reference herein the same as if copied forth at length herein.

(emphasis added)

■ Relator has provided this court with a certified copy of Smith's "First Amended Motion to Enforce" and there is no "Exhibit A" attached to the motion. Without "Exhibit A," the motion does not comport with the requirements of sections 14.311(a) and (b), and section 14.312(a). First, without "Exhibit A," that motion does not state the "manner of noncompliance" as required by section 14.311(a). Second, it does not specify each date that relator allegedly failed to make a payment; the amount due; the amount paid by relator, if any; or the amount of arrearage. Therefore, the motion fails to satisfy the mandatory requirements of sections 14.311(b) and 14.312(a).

■ "Due process of law demands that before a Court can punish for a contempt not committed in its presence, the accused must have full and complete notification of the subject matter, and the show cause order **or other means of notification must state when, how, and by what means the defendant has been guilty of the alleged contempt.**" *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex.1969). (emphasis added) A constructive contemnor must be given complete notification and a reasonable opportunity to meet the charges by way of defense or explanation. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). A contempt judgment rendered without proper notification is a nullity. *Id.* (citing *Ex parte Ratliff*, 117 Tex. 325, 327–28, 3 S.W.2d 406, 407 (1928)).

In *Ex parte Barnett*, 600 S.W.2d 252, 253 (Tex.1980), Barnett was held in contempt for failure to pay child support. The commitment order delivered to the sheriff referred to "the attached exact copy of the judgment of the court herein." *Id.* at 256. However, there was no judgment attached to the commitment order. *Id.* The court held that because there was no written judgment or order of contempt, relator was deprived of due process. *Id.* The court stated that without the judgment, the order failed to clearly state in what respect the court's order was violated. *Id.* Barnett was ordered discharged. *Id.* at 257. We find *Barnett* analogous to the case before us.

■ Obviously, "Exhibit A" was the document that contained the information required by the Family Code and that would have informed relator "in what respect the court's order has been violated." *See id.* at 256. Without that document, relator did not receive the notice required under the Texas Family Code and was not specifically informed of the violations alleged as required by due process. Relator was deprived of due process of law because he was not fairly

---

1. Also in December 1992, Smith filed a Motion to Modify seeking to extend child support payments past the child's eighteenth birthday because the child is disabled and requires continued support. The trial court heard that motion on May 3, 1994, and found that child support should be continued in the amount of $1,500.00 per month. Relator has appealed that order and it is currently pending before this court.

apprised of the allegations against him. Therefore, the contempt judgment and the commitment order based on the first amended motion are void.

Smith argues that relator has "waived" any complaint concerning the failure to attach "Exhibit A" to the first amended motion to enforce because he did not present this complaint to the trial court. Further, she argues that relator has failed to prove that "Exhibit A" was not attached to the motion.

First, relator provided this court with a certified copy of Smith's first amended motion to enforce. "Exhibit A" is not attached to the certified copy. The District Clerk of Brazoria County certified that the First Amended Motion to Enforce that is included in the record is "a true and correct copy of the original record on file in my office." Thus, "Exhibit A" was not attached to the motion. This contention is without merit.

■ Second, Smith claims that relator "waived" any complaint on the notice issue because he did not point out to the trial court that the exhibit was not attached to the motion. Essentially, Smith is arguing that relator has failed to preserve error on this issue. This argument has no place in an original proceeding. Terms such as "waiver" and "preservation" apply to appeals. This is apparent from the language of appellate rule 52(a):

> In order **to preserve a complaint for appellate review,** a party must have presented to the trial court a timely request, objection or motion, stating the specific ground for the ruling he desired the court to make if the specific grounds were not apparent from the context.

Tex.R.App.P. 52(a). (emphasis added) The motion to enforce and the motion for contempt either comply with the requirements of the Texas Family Code or they do not. In this case, Smith's motion did not comply with the Code's mandates, and relator does not have to point out this noncompliance to "preserve" the complaint for review in an original proceeding. Relator was entitled to proper notice and Smith's argument that relator waived his due process rights is without merit.

Though Smith failed to cite any cases in support of her argument, we have found three cases stating that inadequate notice can be waived if a relator fails to object by specially excepting. *See Ex parte Occhipenti,* 796 S.W.2d 805 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *Ex parte Stephens,* 734 S.W.2d 761 (Tex.App.—Fort Worth 1987, orig. proceeding); *Ex parte Blackmon,* 529 S.W.2d 570 (Tex.Civ.App.—Houston [1st Dist.] 1975, orig. proceeding).

*Occhipenti, Stephens,* and *Blackmon* all state that a complaint that a motion or order lacks specificity and thereby fails to give adequate notice of the charges to the contemnor is waived if the contemnor fails to properly object in the trial court. *Occhipenti,* 796 S.W.2d at 810; *Stephens,* 734 S.W.2d at 762; and *Blackmon,* 529 S.W.2d at 573. *Occhipenti* and *Blackmon* state that the contemnor must make "special exception" requesting further notice of the charges. *Occhipenti,* 796 S.W.2d at 810; *Blackmon,* 529 S.W.2d at 573. We decline to follow these cases because they have converted an incorrect **assumption** into law.

All three cases can be traced back to *Ex parte Woodruff,* 483 S.W.2d 951 (Tex.Civ.App.—Texarkana 1972, orig. proceeding). The *Occhipenti* case relies on *Stephens* and *Blackmon. Stephens* relies on *Blackmon* and *Woodruff. Blackmon* relies exclusively on *Woodruff.* In *Woodruff,* the relator was held in contempt for failure to pay child support arrearage. 483 S.W.2d at 953. The relator argued that the trial court's contempt judgment did not conform to the allegations in the pleadings and was therefore void under Tex.R.Civ.P. 301. *Id.* at 954. The relator's contention was based on the fact that the contempt motion alleged that Woodruff "failed and refused" to pay the arrearage, while the order of commitment recited that Woodruff "willfully" disobeyed the support order and that he had the ability to pay. *Id.* at 953. In response to the claim the court stated:

> Woodruff's argument **assumes** that the Texas Rules of Civil Procedure governs [sic] this procedural aspect of the action in the trial court. **Consistent with such assumption,** other pertinent rules on the

same subject would necessarily have affect also. Failure to object to the pleadings constitutes a waiver of defects therein under Tex.R.Civ.P.Ann. 90 and trial of issues outside the pleadings is authorized by Tex. R.Civ.P.Ann. 67. In the absence of a record showing the contrary, the implication of the judgment is that any defect in pleadings was waived and that the issues of willfulness and ability to pay were tried outside the written pleadings. Woodruff's first and second points of error are overruled.

*Id.* at 954. (emphasis added)

The *Woodruff* court, while recognizing that relator's argument merely **assumed** that Tex.R.Civ.P. 301 applied to the contempt proceeding, accepted that assumption for the purposes of the opinion without citing any authority to support it. *See id.* (emphasis added) Rule 301 provides that a trial court's judgment must conform to the pleadings, the nature of the case proved, and the verdict, if any. The court then stated that if rule 301 applied, then other pertinent rules of procedure would also apply. *Woodruff,* 483 S.W.2d at 954. The court looked to Tex. R.Civ.P. 90 which provides that pleading defects must be specifically pointed out by written exception to the trial court before the judgment is signed or the defect is waived. The court held that because the record did not show that relator objected, any variance defect was waived and the issues of "willfulness" and "ability to pay" were tried by consent under Tex.R.Civ.P. 67. *Id.*

 Thus, *Woodruff* holds only that if a relator wants to complain that the contempt judgment does not conform to the allegations in the motion for contempt and is therefore void under rule 301, he or she must specially except under rule 90. We disagree with the *Woodruff* holding and the interpretations placed on it by the courts in *Occhipenti, Stephens,* and *Blackmon.* First, there is no authority, other than *Woodruff* and its assumptive analysis, to support the proposition that the cited rules apply in a contempt proceeding. While certainly they apply in a conventional civil trial on the merits, a contempt proceeding is not a conventional civil trial. A contempt proceeding is unlike a civil

suit, has some of the incidents of a trial for crime, and is quasi-criminal in nature. *Ex parte Cardwell,* 416 S.W.2d 382, 384 (Tex. 1967). The Texas Supreme Court has long held that contempt proceedings in Texas should conform as nearly as practicable to those in criminal cases. *Ex parte Johnson,* 654 S.W.2d 415, 419 (Tex.1983) (citing *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960); and *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306, 311 (1939)). Among the due process rights accorded an alleged contemnor is the "right to reasonable notice of each alleged contumacious act." *Ex parte Brister,* 801 S.W.2d 833, 835 (Tex.1990) (Cook, J., concurring). Without that notice, the contempt judgment is void. *Id.* (citing *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex. 1979)). None of the many Texas Supreme Court cases which hold that lack of adequate notice renders the contempt judgment void mention anything to suggest that the contemnor must object to protect his right to notice. *See, e.g., Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). Thus, the *Woodruff* holding flies in the face of traditional notions of contempt proceedings and the protections to be afforded in those proceedings.

Further, the Texas Family Code does not require "special exceptions" or other objections as a predicate for a complaint about inadequate notice; rather it requires that a specific type of notice be given in enforcement and contempt motions. While section 14.311(f) does state that an alleged contemnor **may** file "special exceptions" to a motion to enforce, it does not require it, unlike Tex. R.Civ.P. 90 which does require an objection to preserve pleading defects for appeal. The Texas Legislature purposefully placed precatory language in section 14.311(f); if it had desired to make that section mandatory, it could have easily done so. Section 14.312, relating to contempt motions, does not even provide for the filing of special exceptions.

Second, the *Woodruff* case only concerns a complaint about a variance between the pleadings and the judgment. *Woodruff* had nothing to do with allegations that the relator did not receive the notice required by the Texas Family Code and traditional notions of due process. Thus, the three cases based on

*Woodruff* incorrectly analyzed it and its limited holding. The courts in *Occhipenti, Stephens,* and *Blackmon* extended and distorted the holding in *Woodruff* to support their holdings that a contemnor must object if the motion for contempt does not give the notice required by due process. We hold that such a proposition is not supported by case law, the Texas Family Code, or the well-established requirements of due process.

We hold that relator did not "waive" his due process claims as alleged by Smith. Relator was denied the notice required by the Texas Family Code. Because the contempt judgment and the commitment order were based on a motion that failed to fairly apprise relator of the allegations against him, relator was deprived of his liberty without due process. The contempt judgment and the commitment order are void, and relator's second contention is sustained.

■ We note here that during oral argument, both parties strongly urged this court to address relator's first contention concerning the trial court's failure to: (1) allow relator to introduce evidence concerning social security disability payments made to Smith for the benefit of the child; and (2) credit relator with these same payments. The payments were allegedly requested by relator to cover his regular child support payments during the time he was disabled and unable to work. The concurrence has chosen to address this issue; however, we hold that this issue is not one that can be raised in a writ of habeas corpus.

■ This issue is one of first impression in this State and we appreciate the parties' request for guidance, but the posture of this case prevents its review. As we stated above, courts are empowered to issue a writ of habeas corpus only if the order underlying the contempt is void, *Shaffer,* 649 S.W.2d at 302, or if the contempt order itself is void. *Gordon,* 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Friedman,* 808 S.W.2d at 168. An order is beyond the power of the court if the court lacks: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; or (3) authority to

render the particular judgment. *Ex parte Salfen,* 618 S.W.2d 766, 769 (Tex.Crim.App. 1981).

First, the error alleged by relator concerning the disability payments does not concern the jurisdiction of the court. Second, we disagree with the statement in the concurring opinion that this alleged error is one that denied relator due process. A trial court's refusal to allow a party to introduce certain evidence does not amount to a deprivation of due process so as to render the court's judgment void. The failure to allow relator to introduce this evidence or to credit relator with any of the payments is not a deprivation of liberty without due process. The action taken by the trial court, even if erroneous, would merely render the judgment voidable, not void. We can only issue a writ of habeas corpus if the order or judgment complained of is void. *Shaffer,* 649 S.W.2d at 302. Thus, it would be improper to address the social security payment issue in this original habeas corpus proceeding.

■ An application for writ of habeas corpus is not the proper vehicle to complain about this type of error, and because there is no appeal from a contempt judgment, the question is what is the appropriate manner in which to raise this issue in the appellate court. The first option for a party confronted with the issue of whether social security payments can be credited toward child support obligations is to go to the trial court **before** having those payments sent to the child and ask the court to modify the child support order to reflect the change in circumstances and allow the child support payments to be made through social security benefits. See TEX.FAM.CODE ANN. § 14.08(c)(2) (Vernon Supp.1995). Section 14.08 states that after a hearing, the court may modify an order that provides for the support of a child if the circumstances of the child or a person affected by the order to be modified have materially and substantially changed since the rendition of the order. *Id.*

■ In this case, however, the relator did not move to modify the order before applying for and sending the social security payments to Smith. In a proper setting, the appropri-

ate vehicle for bringing this issue to the attention of the appellate court is by writ of mandamus under TEX.R.APP.P. 121. However we make no comment concerning the possible outcome of such an action.

Because sustaining relator's second contention is sufficient to find the contempt and commitment orders void, it is unnecessary to address relator's remaining contentions. Relator's petition for writ of habeas corpus is granted. Relator is ordered released from bond and discharged from custody.

MURPHY, C.J., concurs in the result only.

HUDSON, Justice, concurring.

While I concur with the majority's decision, I write separately to speak to an issue that both parties asked this court to address.

In his first argument, relator claims the contempt judgment is void because the trial court failed to credit him with social security payments made to his former wife, Jerry Smith ("Smith"). These payments were allegedly made in lieu of relator's regular child support payments. This is an issue of first impression in Texas.

In a contempt hearing, the proceedings are quasi-criminal in nature, and the contemnor must be deemed possessed of all the rights and privileges of one accused of a crime. *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967) (orig. proceeding); *Ex parte Harris*, 581 S.W.2d 545, 547 (Tex.Civ.App.—Fort Worth 1979, orig. proceeding). The trial court must presume at the inception of a contempt hearing that a person is *not* in contempt. *Ex parte Elmore*, 161 Tex. 585, 342 S.W.2d 558, 561 (1961) (orig. proceeding). If found in contempt, however, there is no appeal from the trial court's judgment.

An original habeas corpus proceeding is a collateral attack upon the order of contempt, and the relator may obtain relief only if the order is void. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976) (orig. proceeding). A contempt order is void if (1) it was beyond the power of the court or (2) it deprives the relator of his liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980) (orig. proceeding).

In reviewing an order of contempt, this Court must take into consideration the entire record, including evidence offered at the contempt hearing, to determine whether due process has been accorded the relator. *Ex parte Cardwell*, 416 S.W.2d at 384; *Ex parte Elmore*, 342 S.W.2d at 561; *Ex parte Cox*, 479 S.W.2d 110, 113 (Tex.Civ.App.—Houston [1st Dist] 1972, orig. proceeding); *Ex parte Fiedler*, 446 S.W.2d 698, 700 (Tex.Civ.App.—San Antonio 1969, orig. proceeding).

The relator contends he was disabled for several years. He further claims he applied for disability benefits on behalf of his daughter. During the first year of his disability, he alleges social security benefits were paid to Smith in the amount of $466 per month. During the remainder of his disability, he asserts the payments were raised to $506 per month. The trial court refused to admit or consider any evidence of the social security disability payments, but did permit the relator to make a bill of exception.

A majority of the states which have considered the issue have held that social security disability payments may be credited toward the parent's child support obligations.[1] "Social security payments are a substitute for the disabled parent's earnings and are not gratuities from the federal government." *Pride v. Nolan*, 31 Ohio App.3d 261, 31 OBR 546, 511 N.E.2d 408, 411 (1987). In fact, "[o]ne of the prime purposes of the social security act is to provide a means for a disabled worker to meet his obligations during a period of disability." *Perteet v. Sumner*, 246 Ga. 182, 269 S.E.2d 453, 454 (1980).

1. *See generally* Bruce I. McDaniel, Annotation, *Right to Credit on Child Support Payments for Social Security or other Government Dependency Payments made for Benefit of Child*, 77 A.L.R.3d 1315 (1977). Also *Matter of Marriage of Callaghan*, 19 Kan.App.2d 335, 869 P.2d 240, 242 (1994); *In re Marriage of Henry*, 156 Ill.2d 541, 190 Ill.Dec. 773, 779, 622 N.E.2d 803, 809 (1993); *Poynter v. Poynter*, 590 N.E.2d 150, 152 (Ind.App. [1st Dist.] 1992); *Board v. Board*, 690 S.W.2d 380, 381 (Ky.1985); *In re Marriage of Robinson*, 651 P.2d 454, 455 (Colo.Ct.App.1982); *Mooneyham v. Mooneyham*, 420 So.2d 1072 (Miss.1982); *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980); *Potts v. Potts*, 240 N.W.2d 680 (Iowa 1976); *Cohen v. Murphy*, 368 Mass. 144, 330 N.E.2d 473, 475–76 (1975).

An order to pay child support is for the benefit of the children. "If the amount due is paid by the government through Social Security benefits on account of the father, then the purpose of the support order is accomplished." *Windham v. State ex rel. Windham*, 574 So.2d 853, 855 (Ala.Civ.App. 1990). The rationale of these decisions is persuasive. I would hold that social security disability payments made on behalf of a disabled parent for the benefit of his or her children should be credited toward satisfaction of court ordered child support payments.

Habeas corpus will lie only to absolve the bonds of illegal restraint. It is not available as a writ of error to review or correct erroneous proceedings or as an appeal from erroneous judgments. *Ex parte Beamer*, 116 Tex. 39, 285 S.W. 255, 256 (1926) (orig. proceeding). Moreover, this Court cannot, on an original writ of habeas corpus, review the trial court's exercise of discretion nor the sufficiency of the evidence to support the trial court's action. *Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex.App.—Dallas 1994, orig. proceeding). The issue before us, however, is whether the trial court denied relator due process of law when it refused to permit him to *introduce* evidence which could have established total or partial satisfaction of his child support obligations.

The majority's conclusion that the motion for contempt failed to provide sufficient notice is correct. I would further hold, however, that the contempt judgment and commitment order are void because relator was deprived of the right to present admissible evidence in his defense. This issue will probably reemerge in subsequent proceedings between these parties. Believing the issue should be addressed while it is presently before the Court, I concur.